

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ARUN WIITA,

              Plaintiff,             07 Civ.

   -versus-

                                             **COMPLAINT**

RAYMOND KELLY, Commissioner of the New
York City Police Department; THE CITY OF       07CV11056
NEW YORK; and POLICE OFFICER                   ECF CASE
JOHN DOE,

              Defendants.
-------------------------------------------------------x

PRELIMINARY STATEMENT

1.    This is a civil rights action to vindicate the right of law-abiding members of the public to engage in photography and filmmaking in public places in New York City. The plaintiff Arun Wiita, who is a graduate student in the M.D./Ph.D. program at Columbia University, was detained and handcuffed by a New York City police officer in July 2007 for doing nothing more than taking photographs in the vicinity of a New York City subway station. Mr. Wiita's arrest came within hours of his having embarked upon a carefully planned ten-day project to photograph all 468 subway stations. Though he was subsequently released without formal charges, Mr. Wiita was humiliated and confused by the arrest, and he believes that he was targeted in part because of his South Asian or Middle Eastern appearance.

2.    Upon information and belief, the New York City Police Department conducts a substantial number of investigations of photographers and filmmakers, with the

1

Department's Intelligence Division participating in many of those investigations and maintaining a database of those investigated. Despite the frequency of such investigations and despite NYPD Commissioner Raymond Kelly having been informed of unlawful detentions and arrests in conjunction with these investigations, the NYPD has no policies, procedures, or training specifically addressing the investigation of First Amendment protected photography and filmmaking. As a result, members of the Department are unlawfully detaining and arresting photographers and filmmakers, are unlawfully attempting to coerce them into destroying images or disclosing them to police officers, and are maintaining a database of law-abiding photographers and filmmakers.

3. The defendants have violated Mr. Wiita's rights under the First and Fourth Amendments to the United States Constitution and his rights under New York State law. He seeks declaratory and injunctive relief, compensatory damages for his arrest, and attorneys' fees. In particular, Mr. Wiita hopes that this lawsuit will prompt the NYPD to implement appropriate policies, training, and supervision to assure that law-abiding photographers are not harassed or arrested by police officers.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(3-4).

5. This Court has supplemental jurisdiction over all state constitutional and state law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Plaintiff's claims arise in the Southern District of New York.

## PARTIES

7. Plaintiff ARUN WIITA is a resident of New Jersey who currently lives in New York City to attend graduate school at Columbia University.

8. Defendant RAYMOND KELLY is the Commissioner of the New York City Police Department. As such, he has "cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department" and is the "chief executive officer," "chargeable with and responsible for the execution of all laws and the rules and regulations of the department." He is sued in his official capacity.

9. Defendant THE CITY OF NEW YORK is a municipal corporation within the State of New York. The NYPD is an agency of the City of New York.

10. Defendant OFFICER JOHN DOE is a police officer in the NYPD who arrested Mr. Wiita after observing him taking photographs in a public place. He is sued in his official and personal capacities.

## FACTS

11. The plaintiff Arun Wiita, who is 26 years old, is a natural-born citizen of the United States. He is a graduate student in the M.D./Ph.D. program at Columbia University—a seven-year program from which he is scheduled to graduate in 2009. Mr. Wiita has worked as a teaching assistant at Columbia, and he has also

worked at the university's technology transfer organization. He received his undergraduate education at Princeton University and graduated in 2002 with an A.B. in Chemistry and a certificate in Finance.

12. Mr. Wiita has dark skin, and his facial features are consistent with South Asian or Middle Eastern ancestry.

13. Mr. Wiita, who recently proposed to his fiancée, remains close with his parents and his brother, who live in New Jersey. He travels to India about once a year to see his extended family.

14. After he graduated from Princeton, Mr. Wiita moved to New York, where he became fascinated with the New York City subway system. He has read numerous books about the subway and has learned a great deal about the system's history, characteristics, and features. This interest in, and appreciation for, the subway became the kernel of an idea to undertake a photography project involving the entire subway system.

15. In early 2007, Mr. Wiita realized that he had some vacation time coming up in July. Mr. Wiita was unable to afford an expensive vacation due to his status as a graduate student and the fact that he had already planned a December 2007 trip to India, his first with his fiancée. He decided to use this vacation time to carry out his subway project.

16. During the spring of 2007, Mr. Wiita spent many hours planning his project. He decided that he would visit every station in the New York City subway system. At each stop, he would take photographs of the station's signs, artwork, and unique features. Mr. Wiita also planned to take pictures of the streetscape around

each station. Eventually, he hoped to use the photographs to create a website, which would serve as a unique compendium where a visitor could see what any New York City subway station and its surrounding neighborhood look like. He spent time discussing his plans with friends, and he borrowed a point-and-shoot digital camera from his brother.

17. Mr. Wiita allotted ten days to completing the photography for his project. In order to visit and photograph all 468 stations, he would need to visit between forty-five and fifty stations per day. He spent a great deal of time and energy planning the most efficient routes he could take through the subway system.

18. On the morning of July 16, 2007, Mr. Wiita began his project. He left his home and rode north on the "1" Line from the 168th Street Station. He took photographs inside and outside the stations at 168th Street, 181st Street, 191st Street, and Dyckman Street without incident.

19. At approximately 8:00 a.m. that morning, Mr. Wiita arrived at the elevated 207th Street station on the "1" Line. He left the train and stepped onto the platform. From that platform, he took a photograph of the station sign and a panoramic photograph of the view to the northeast of the platform.

20. While on the platform at the 207th Street subway station on the "1" Line, Mr. Wiita noticed a uniformed police officer on the opposite platform. Mr. Wiita believes that the police officer observed Mr. Wiita taking photographs from the platform. The police officer, Defendant Officer John Doe, made no attempt to communicate with Mr. Wiita or attract Mr. Wiita's attention at that time.

21. Mr. Wiita descended to street level, where he began to take photographs from the sidewalk at the corner of 10th Avenue and 207th Street. Mr. Wiita noticed that traffic at the intersection was heavy and moving slowly at the time and that part of the road had been blocked off.

22. Mr. Wiita took only two photographs from the sidewalk before Defendant Officer John Doe approached and interrupted him.

23. Mr. Wiita was not engaging in illegal or improper activity of any kind, and nothing about his behavior or conduct provided a reasonable basis to suspect Mr. Wiita of unlawful action.

24. When Officer John Doe approached, he asked what Mr. Wiita was doing. Mr. Wiita was cooperative and polite. At this point, Mr. Wiita believed he had nothing to fear and felt confident that the officer would ask him a few questions, be satisfied with Mr. Wiita's answers, and allow Mr. Wiita to continue taking his photographs from the sidewalk.

25. Mr. Wiita explained his project to Officer John Doe.

26. Officer John Doe asked Mr. Wiita for identification.

27. Mr. Wiita produced his New Jersey Driver's License and his Columbia University Student Identification Card.

28. Officer John Doe retained Mr. Wiita's driver's license and university ID card throughout the incident.

29. Upon information and belief, Officer John Doe recorded Mr. Wiita's information in a notebook. Upon information and belief, Officer John Doe took notes in this same notebook throughout the incident.

30. Officer John Doe asked if Mr. Wiita had any identification issued by the State of New York. Mr. Wiita responded that he did not have any New York State-issued identification, but he offered to retrieve his passport from his home.

31. Officer John Doe asked to see Mr. Wiita's photographs. Mr. Wiita took his camera from its bag and used the screen on the camera to show Officer John Doe the approximately forty photographs he had taken that morning. The vast majority of these photographs depict street signs, streetscapes, and station signs.

32. Officer John Doe told Mr. Wiita to put his hands behind his back. Mr. Wiita put the camera in his bag, and then complied. Officer John Doe fastened handcuffs to Mr. Wiita's wrists.

33. Officer John Doe told Mr. Wiita that the identification provided by Mr. Wiita could not be checked over the radio and that Officer John Doe would need to take Mr. Wiita to a police station in order to check Mr. Wiita's identification in front of the officer's peers.

34. Officer John Doe led the handcuffed Mr. Wiita to stand near the wall of a nearby building.

35. There were many people walking about the neighborhood at that time of the morning. This foot traffic, combined with the fact that Mr. Wiita was now facing the unusually heavy and slow-moving street traffic, exacerbated Mr. Wiita's feelings of embarrassment and frustration as he stood on a busy street corner in handcuffs.

36. Officer John Doe moved several feet away from Mr. Wiita and began talking on his radio. Upon information and belief, Officer John Doe did not attempt at this time to check Mr. Wiita's identification over the radio.

37. Officer John Doe returned and requested to see Mr. Wiita's photographs a second time.

38. Officer John Doe reached into Mr. Wiita's bag to retrieve the camera. Mr. Wiita instructed the officer on how to operate the camera to view the photographs.

39. Officer John Doe operated the camera, viewed the photographs, and, upon information and belief, described the photographs to the person or persons with whom he was speaking on his radio.

40. At one point, Mr. Wiita asked Officer John Doe whether Mr. Wiita would receive a citation of some kind. Officer John Doe responded that Mr. Wiita might receive a ticket for $25 or $50, but did not indicate what charges, if any, such a citation would allege.

41. Approximately twenty minutes after Mr. Wiita was placed in handcuffs, two other men arrived. Upon information and belief, these men were plainclothes police officers. These officers did not identify themselves to Mr. Wiita, and Mr. Wiita does not know their names or badge numbers.

42. Mr. Wiita explained to the plainclothes officers his belief that photography was perfectly legal in and around subway stations. The officers did not indicate any disagreement or dispute with Mr. Wiita's statement.

43. Officer John Doe again took the camera from Mr. Wiita's bag.

44. Officer John Doe used Mr. Wiita's camera to show the plainclothes officers the photographs taken by Mr. Wiita that morning.

45. The plainclothes officers questioned Mr. Wiita, who again explained his project.

46. Upon information and belief, the plainclothes officers instructed Officer John Doe to check Mr. Wiita's identification over the radio. Upon information and belief, Officer John Doe checked Mr. Wiita's information over the radio.

47. Upon information and belief, Officer John Doe informed the plainclothes officers that Mr. Wiita's identification had checked out and was "clean."

48. The plainclothes officers instructed Officer John Doe to release Mr. Wiita from the handcuffs, and Officer John Doe did so. Officer John Doe then returned Mr. Wiita's identification.

49. Mr. Wiita, desiring to avoid any similar incidents in the future, asked the three police officers what Mr. Wiita might do to prevent being arrested again in the future. The officers only suggested that Mr. Wiita get a letter from Columbia University indicating that Mr. Wiita was engaged in a school photography project. This advice was particularly unhelpful to Mr. Wiita, since his project was not school-related.

50. Officer John Doe removed the handcuffs from Mr. Wiita at approximately 8:30 a.m., at which point Mr. Wiita had been detained on the street corner, in public view, for approximately thirty minutes.

51. Because of this incident, Mr. Wiita modified his original plans for his photography project. He significantly reduced the number of photographs he had planned to take inside subway stations, and he took photographs only when

confident that no other people were around. He took fewer pictures in neighborhoods where he thought picture taking might make him conspicuous, and he generally tried to minimize any behavior that he thought might make him a target of police scrutiny.

52. At all times, Defendants' actions were taken under color of law.

53. Mr. Wiita strongly believes that Officer John Doe arrested him solely because of his skin color and facial characteristics and because he was taking photographs. Mr. Wiita is offended by this act of racial profiling and is hurt and humiliated by the feeling that he is branded as a potential terrorist every time he uses a camera outdoors.

54. Upon information and belief, New York City and the NYPD have a policy, practice, or custom of subjecting photographers and videographers—particularly those who fit Middle Eastern or South Asian racial and ethnic profiles—to increased scrutiny and harassment. Upon information and belief, the NYPD has instructed officers to target photographers and filmmakers for special scrutiny but has failed to develop and implement reasonable policies, training, and supervision to assure that officers recognize and respect the constitutional right to engage in lawful photography and filmmaking.

55. Upon information and belief, NYPD officers have on many occasions stopped and questioned photographers and videographers engaged in lawful behavior, sometimes unlawfully arresting them.

56. Upon information and belief, the Intelligence Division of the NYPD is maintaining a database that includes the identities of everyone investigated for photography by the Division, regardless of the outcome of the investigation.

57. On May 4, 2006, the New York Civil Liberties Union wrote to defendant Raymond Kelly to inform him about unlawful detentions of photographers and the lack of Department policies, training, and supervision of photography investigations. The letter specifically asked Commissioner Kelly to look into this matter and for the Department to develop appropriate policies, training, and supervision. As of the filing of this complaint, the NYCLU had received no response to its letter.

58. In the spring of 2007 the City settled a lawsuit filed by a filmmaker, represented by the NYCLU, who had been arrested while filming on a midtown sidewalk and who in the suit alleged that the Department had an unlawful policy, practice, and custom of unlawfully investigating and detaining photographers and filmmakers. In settling that case, New York City refused the plaintiff's request that the NYPD implement reasonable policies, training, and supervision bearing on police investigations of photographers.

59. Upon information and belief, Mr. Wiita was unlawfully detained, falsely arrested, and illegally searched pursuant to the practices and customs as alleged above.

60. Mr. Wiita filed a Notice of Claim on October 11, 2007, within 90 days of the incident, as required by New York State General Municipal Law.

## FIRST CAUSE OF ACTION

61. The Defendants' actions violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

62. The Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

63. The Defendants' actions violated Plaintiff's rights under §§ 1, 6, 8, 11, and 12 of Article I of the New York State Constitution.

## FOURTH CAUSE OF ACTION

64. The Defendants' actions violated Plaintiff's rights under the common law of the State of New York to be free from false arrest, assault, and battery.

WHEREFORE, Plaintiff requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Issue a declaratory judgment that the Defendants' actions violated the First, Fourth, and Fourteenth Amendments to the United States Constitution, and violated the Constitution and laws of the State of New York;

(3) Issue an injunction requiring the Defendants to expunge from their records, including but not limited to the Intelligence Division database, any information concerning Mr. Wiita relating to his July 2007 arrest;

(4) Award compensatory damages;

(5) Award attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(6) Grant any other relief the Court deems appropriate.

Respectfully Submitted,

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

_____
CHRISTOPHER DUNN (CD-3991)
ARTHUR EISENBERG (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
Counsel for the Plaintiff

Dated: December 6, 2007
New York, N.Y.

On the Complaint:

TIMOTHY FOSTER*
Law Student
New York University School of Law
Civil Rights Clinic

BENJAMIN KLEINMAN*
Law Student
New York University School of Law
Civil Rights Clinic

*The Plaintiff and the New York Civil Liberties Union Foundation will be seeking leave of court to permit these students to serve as attorneys in this matter pursuant to the Southern District's Plan for Student Practice in Civil Actions.